Appellant Michael Gifford v. HCH Administration, Inc., Appellee Steven Swarbrick. Mr. Gifford? May it please the Court, good morning, Your Honors. My name is Mike Gifford. I represent Kress Corporation. Possibly I should have offered Judge Holdridge a ride. Yeah, I just looked down and saw that. The roads are unusually wet. Yes, they are very wet. We are here today, Your Honor, because the Circuit Court in Peoria County erred in granting summary judgment to HCH on both counts of the complaint. Your Honors are at least as aware as I am of the very high burden put on HCH as the moving party. Simply and colloquially put, all ties or anything close to a tie go to the runner. HCH has a very high burden here. If the Court throws up its arms and essentially says, gee, I don't know, which is what the Circuit Court probably should have done, Kress as the non-moving party prevails. Which section of the contract would require them to determine eligibility? Your Honor, I think that comes from three separate provisions in the contract. There is Section M of Exhibit A, which talks about maintaining eligibility records. And I realize that the Circuit Court decided that maintaining did not include making that eligibility determination. I mean, there's a difference between the word maintain and determine. That's true, Your Honor, but I think if you read that provision in conjunction with other provisions in the contract, I think there is at least a genuine issue that HCH has that duty. I think it's very easy to overlook the preamble to the contract, the whereas provisions. And what Kress was purchasing there, it's made clear there. What HCH was offering, what Kress was purchasing, was HCH's expertise in doing this type of thing. It's precisely because Kress doesn't have that experience, doesn't have that expertise, that they go to a third-party administrator, a TPA such as HCH, for that purpose. Maintaining, I think, has to be read in conjunction with that recital that the parties make to each other at the very top of the contract. Further, Your Honor, the language that Judge Dubicki relied on regarding HCH's not having the obligation to make that determination, that is entirely Kress's determination, comes in Section 7.5 of the contract, which is on page C67 in the record, Your Honor. And frankly, Your Honor, I think Judge Dubicki read out of it some very crucial language that's there. It says the employer shall be responsible for maintaining the validity and qualified status of the plan and shall, when requested, provide the contract administrator with necessary guidance relative to the meeting and intent, et cetera. When requested, frankly, the circuit court basically ignored. I think there's a very reasonable interpretation of that language that says until HCH makes a request, until HCH picks up the phone or somehow says to Kress, tell us what to do here, tell us how to interpret this plan, there's an assumption that HCH is doing that. I think that when requested... But where does the assumption arise from? I think it... Excuse me, Your Honor. Yeah, go ahead. I mean, how does it arise? I mean, what you're reading is they have this dialogue, but when requested. But that presupposes there's this obligation. And so you're saying when requested is part of the factors that determine the requirement, right? That's what you're saying, to determine eligibility. I'm not sure I understand Your Honor's reference. I'm trying to understand what you're... Your point in the contract is you're saying you have to look at the prefatory language. Prefatory language, yes. You have to take a broad view of maintained eligibility. Correct. And this section you're talking about right now. 7.5, yes, Your Honor, which talks about when requested. And I think if you throw that all together, and I hate to refer to Justice Douglas' penumbra effect, but I think all of that together sort of creates a reasonable understanding on Kress's part, and certainly an ambiguity in the contract, that HCH is going to be making those determinations. I think if HCH had picked up the phone and had said, Kress, you've got this obligation under 7.5, tell us what to do, we'd have a very, very different case than what we have here today. Because the 7.5 obligation would have kicked in. Kress would have had the obligation to make that determination. But the record is clear that never happened. And I think that there's a reasonable interpretation of this language taken together that says, until HCH makes that call, makes that request, using the when requested language in 7.5, there's a reasonable interpretation that HCH is making that call. But now the call we're talking about is to determine eligibility. Yes, Your Honor. So from your view, eligibility determination is on the other side until the phone call is made. I think there's a reasonable assumption, given the status of the parties, given the language of the contract, that until HCH makes that call, says tell us what to do, that they are making that determination. And that's consistent with, of course, the dealing between the parties. Jill German is the administrator at Kress. She's a payroll administrator. Her testimony, to summarize it, essentially says that she collects the forms, she sends them to HCH, she doesn't make the eligibility determination. HCH makes that. She assumed, in this particular case that was made based on an examination of the certificate of prior coverage. And what's really telling here... In other words, to determine who's eligible, what employees are eligible for insurance coverage. I think in most cases, Your Honor, it's not going to be a big issue, because 90% of the time I would guess people are going to enroll when they become employed. This was an unusual situation. Mr. Rossell had prior coverage, didn't enroll immediately, and came in and wanted to enroll when his prior coverage expired. And I think in this situation there's a reasonable interpretation of the events that says that HCH made that determination. But even more so, Your Honor, if you look at the interplay between Jill German at Kress and Wendy McCann at HCH, it's very telling. German is emphatic. I sent that with the date blank. McCann says, I don't really remember, but I don't make those kind of determinations. But the most important thing, and frankly, which the circuit court ignored, was an email that they had a few days later, where German sends to McCann, tell me what date you used for eligibility. She doesn't say, tell me what date I used. She doesn't say, tell me what date I gave you. She says, tell me what date you used for eligibility. And McCann answered that. McCann says, I show 7-24. That is McCann telling German, I made that decision. Here's what the decision is. And I think that is consistent with the dealings of the parties. Certainly I think we have an ambiguity here. To the extent that HCH doesn't request that decision from Kress, the contract isn't very clear as to who makes it. But it doesn't say that HCH won't. It simply doesn't say anything. And considering that HCH drafted that contract, it's very clear that they drafted the contract. Their CEO admitted it. It was drafted by their attorneys. You have to interpret the contract against HCH and look at the dealings of the parties, and I think it's certainly reasonable that HCH made that determination. That's what they were paid to do. Kress didn't have any expertise there. They were buying HCH's expertise. If you look at the course of dealings, let me rephrase that, please. HCH makes the argument, Your Honor, that they have no obligation at all under the contract to make that determination. Sort of setting aside the question, excuse me, of whether they really did make it or not, but they say that they have no obligation. I think in saying that, even though part of their case law says you have to give credence to every piece of the contract, they're essentially taking whiteout and taking out that when-requested language. They're asking the court to do that. They're asking the court to say that there is not a dichotomy as to how that decision is made based on whether HCH makes a request or not. They're saying just flat out across the board, we have no obligation, and I don't think that that is supported by the language of the contract. HCH argues that Kress has an obligation to provide that information, but they also admit that they never requested it. Why is all of that important? Judge Dubicki focused on that provision in 7.5, but totally omitted in his analysis that HCH never made a request. The court focused on the language that says final authority for interpretation is with the employer. That may be, but this never reached a final authority type position. This was essentially made in the course of dealings. There was no dialogue back and forth that says, how do we make this? It's up to you, you make the call. They never reached that point. And Mr. Stevenson, as I said before, their CEO, clearly says that that contract provision means if we need information, if we want a decision, it's our duty, it's our burden to pick up the phone and ask for it. The circuit court, in its order, says that it's almost a directive from Kress as to who is eligible. There's nothing in the record, Your Honor, to support that interpretation. There's nothing in the record that says that Jill German dictated that this person be enrolled in the plan. German's testimony is that she sent the form with the eligibility date blank. She said, this is what I normally do. When do you send a form out? I'm sorry, Your Honor, I didn't hear you. Who do you send the form for, people who are eligible for the insurance? Was there ever a form sent for someone who wasn't eligible? German's testimony, Your Honor, was that someone comes in to her, requests the form, she gives them the form. When they bring the form back, she sends it on to HCH, and HCH processes it. HCH is positioned that they have no duty in that circumstance to determine an eligibility date, essentially reduces them to a scrivener. Essentially reduces them to the position that they don't have any obligation to do anything but translate information that's on one page to another. And considering that Kress paid for their expertise, I don't think that's a reasonable interpretation of the contract. At R7, a portion of Judge Dubicki's order, he quotes page 42 of the German deposition and says, did Kress ever provide eligibility to HCH? No. Did HCH request eligibility from Kress? No. Did HCH supply eligibility information to Kress? No. The circuit court then essentially ignored those first two answers and says, well, if HCH never supplied eligibility information to Kress, that means that they had no obligation to do so. It means they didn't do so in this case. I don't think you can reach that interpretation. At best, that last answer is inconsistent with the prior two. But if you give credence to the prior two answers, did Kress provide eligibility to HCH? No. That clearly shows that Kress was not in the practice. And that's undisputed. Kress was not in the practice of making those decisions and relied on HCH to do so. Counsel, that's two minutes. Thank you. Your Honor, I've never gotten to the negligence issue. I would make a couple of very brief points. First of all, one of their arguments is that there's no cause of action. There's no cross appeal here. That issue is not properly before the court. That issue was decided by the circuit court way back at the motion to dismiss phase and can't properly or shouldn't properly be considered here. A large part of their argument on negligence focuses on the, frankly, the comedy of errors of the HCH people communicating with Mutual of Omaha. They admit throughout their depositions that they repeatedly contradicted themselves. They repeatedly gave Mutual bad information. They tried to give Mutual what amounts to a specious interpretation of the law in arguing to cover up their errors. And then to crown the whole thing, Jamie Stevenson, relying on nothing more than a timeline without even interviewing his own people who had been talking with Mutual beforehand, sends this letter which contradicts everybody. And he testifies in his deposition what he's essentially telling Mutual is, tell us why we need to tell to get coverage here. Tell us what we need to say and we'll say it. That, I think, supports the idea that their handling of the stock loss was negligent. However, HCH ignores the idea that there was negligence in the initial enrollment decision and the initial eligibility determination. The congregation case, which was the basis of the circuit court initially deciding that there was a cause of action here, isn't limited to misrepresentation. That was the only thing Judge Dubicki analyzed in his order was misrepresentation. And he goes through and he recites the elements and talks about how the evidence doesn't apply. But what congregation says, referring to an accountant, is that you have this additional duty that's extra contractual. It goes beyond the terms and language of the contract. It's a duty that's implied by your position, essentially a malpractice type duty. And may I finish my sentence here? All right. Thank you. It's essentially a malpractice type duty and Judge Dubicki in his analysis, I think, unfortunately, ignored that duty. There's negligence in the initial handling as well as in the subsequent communication to Mutual of Omaha. Thank you. Thank you, Your Honor. Mr. Swofford? Swofford. Oh, my apologies. Steve Swofford for HCH administration. I almost didn't make it this morning. Where did you encounter problems? I live north of this Chicago and Highland Park. So 294 was basically shut down. Edens was shut down. And 355 was, sorry, underwater. Not underwater, but water. Safe travels on the way home. I'm sure it's not going to get better. I hope it will clear up a little bit. Okay. Well, I'm sorry about the personal note. I'm pretty fond of what the trial court ruled in his reasoning. The judge looked at the literal terms of the contract within his four corners, and there was nothing in the administrative agreement that says HCH is supposed to make eligibility determinations. And instead, the administrative agreement says that the duties of the contract administrator with respect to the plan are limited to those set forth in the agreement or as agreed to specifically in writing. Well, there's nothing in the plan that says HCH makes eligibility determinations. The duties of the HCH were set forth in these three exhibits to the agreement, and the only one that talks about eligibility at all is that HCH is to maintain the eligibility records of the plan, but that doesn't say it's to make eligibility determinations. And true, there's this provision in there that says if HCH has a question about eligibility, it's to ask press. Well, that again, to me, I know counsel has a different interpretation, says eligibility determinations are made by press or its lawyer. And finally, paragraph 7.6 of the agreement says that press retains the ultimate responsibility of the plan. Well, that isn't actually finally, because the article 6 of the administrative agreement says that HCH is to act in a manner consistent with the purpose and intent of the Crest plan, and the plan itself says that Crest makes the eligibility determinations. I want to talk a little bit about the enrollment date that was supplied on the form. The form that Roslyn filled out when he applied for this coverage, Roslyn, excuse me. The form was passed on to HCH, and for whatever reason, the enrollment date was left blank. And I don't know why. There's something of a mystery here. It's never cleared up by the testimony, because Jill German said she'd never done this before, where she left it blank and then asked HCH what date to put in. But there was only one date that could be put in. The enrollment date had to be the date that Roslyn lost his coverage with Walmart. That was the enrollment date. And the fact that the application was late was not going to change the enrollment date. There could only be one enrollment date. As far as the course of dealing between the parties, I've already mentioned that this is the only instance in which I've asked HCH what date to put in. So there is really no past course of dealing in which this situation fits. And Jill German testified as well that she told Roslyn that he had to submit this form within 30 days of his loss of coverage. So she knew full well, unless she just didn't bother to look at the form, that this application was late. And I don't know what went on here. I think it was two people trying to get this guy coverage. There's a mystery here, but be that as it may, there's no course of dealing under which HCH made eligibility determinations, and Jill German didn't testify to that effect either. Nor is there any testimony that she ever relied on HCH to double-check her decisions. So the only conclusion from the evidence to me is that Crest made the eligibility determination by passing the form on to HCH and said enroll Rozelle. Okay, I just want to talk about the negligence count. The trial court found multiple reasons why the negligence count couldn't proceed. One, the scope of HCH's duty was limited, it was defined by the contract. So they went on the contract count, they went on the negligence count. Two, Moorman, which is sort of the same analysis, says if there's a contract between the parties, you can't sue and tort. The exception to Moorman doesn't apply, that is furnishing information, because we weren't in the business of furnishing information. The information here was furnished from Crest to HCH. Three, misrepresentation. There was no misrepresentation here at all. Crest and Jill German was aware of every fact that HCH had. So there could be no misrepresentation and there could be no reliance. And finally, a point that the trial court didn't reach, though he did note that this court has the power to affirm on any basis of record, is the indemnity provision in the administrative agreement, which says that HCH's liability is limited to willful malfeasance, bad faith, or reckless disregard of its obligations and duties under the agreement. And there are no such allegations in the complaint. So I think that I would have wished the trial court would have ruled on this, but he didn't. So I ask that you rule on it if necessary and hold that under the terms of the agreement that HCH cannot be liable. There was no cross-appeal, right? There's no cross-appeal, but the judge didn't rule it against us. Didn't rule either. Pardon? Didn't rule. Didn't rule. Expressly said, I'm not going to rule. Anything else? No. Well, then, I'd ask you to affirm. Safe travels home. Counsel? Thank you, Your Honor. I thought counsel's argument was interesting because I think he stood here and stipulated that the form was delivered to HCH with the date blank. That was somewhat of a bone of contention between McCann and German, but I think counsel has now stipulated that HCH did receive the form blank. Part of counsel's argument about negligence, if you look at Judge Dubicki's order, Judge Dubicki basically limited his negligence analysis to the idea that the only duty that HCH had would be found within the contract. That's not what the congregation case says. The congregation case says you can have a negligence count. You can have a negligence obligation. You can find a duty outside of the contract in a situation like this where one party is so clearly relying on the other to provide a professional-type service that the relying party isn't capable of providing for itself. Congregation was accountants. I think the same analysis applies with attorneys, probably doctors. I think in this case, the circuit court initially on the motion to dismiss said we're going to let that count proceed as far as the negligence claim against HCH in providing their administrative services. How many administrative malpractice cases are you aware of? Pardon me, Your Honor? How many administrative malpractice cases are you aware of? I have to admit I'm not aware of any, but I don't think that this is essentially – I don't think you can limit this to a pure administrative context. An administrator has an obligation to understand things that I think Jill German probably doesn't. She says in her deposition that I wouldn't make those determinations. I wouldn't know when the prior coverage went out. She sends all that information along to HCH. I'd say in this context, Your Honor, even though I can't quote you another case that says here's administrative malpractice, I think that there's enough of a disparity in the knowledge, the understanding, the undertakings of the parties to say that the congregation-type doctrine applies. That was an Illinois Supreme Court case. They carved that exception out of Mormon. This wasn't just some sport that the circuit court came up with. I agree with counsel that the analysis here on negligence shouldn't be limited to misrepresentation. Unfortunately, that's what the circuit court did. The circuit court looks at this, and every element of his misrepresentation analysis starts with the faulty assumption that HCH had no duty, and if they had a duty, they didn't breach the duty. Totally ignores the issues of fact as to who provided that date. I think that date is like the fulcrum that the entire case turns on because it supports the claim for breach of contract. It supports the claim for negligence. They admit that they got the date on the form when it was blank. Jill German says, you know, I asked them what the date was. They told me what they used. McCann says, yeah, that had been really slow. Was that the only time that something like that happened? I'm sorry, Your Honor? Was that the only time something like that happened? I cannot cite you to another one. I cannot cite you to another one. If that was the only example of that kind of situation.  However, I think if you look at German's testimony, she was asked, you know, how do you go about it? And it was sort of a general open-ended question. It's cited in my brief. And she says, I wouldn't make that determination. In the absence of clear indication as to whether there's priors or not, I think that supports the idea that there was at least some sort of an understanding there between her and McCann. Counsel, that's one minute. I have nothing further if Your Honor's have nothing. Thank you very much. Thank you, Your Honor. Safe travels to you as well. Thank you. We will be taking the matter under advisement and consulting and conferring with Justice Goldrich before rendering a decision. For now, we'll stand in a brief recess for a panel change. Court is now in recess.